DAVID R. ZARO (BAR NO. 124334)
TIM C. HSU (BAR NO. 279208)
ALLEN MATKINS LECK GAMBLE
    MALLORY & NATSIS LLP
865 South Figueroa Street, Suite 2800
Los Angeles, California 90017-2543
Phone: (213) 622-5555
Fax: (213) 620-8816
E-Mail: dzaro@allenmatkins.com
        thsu@allenmatkins.com

EDWARD G. FATES (BAR NO. 227809)
ALLEN MATKINS LECK GAMBLE
    MALLORY & NATSIS LLP
One America Plaza
600 West Broadway, 27th Floor
San Diego, California 92101-0903
Phone: (619) 233-1155
Fax: (619) 233-1158
E-Mail: tfates@allenmatkins.com

Attorneys for Receiver
THOMAS SEAMAN, Court-appointed Receiver

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| THOMAS A. SEAMAN, Court-appointed Receiver,<br><br>            Plaintiff,<br><br>     v.<br><br>WEI HE, individually and as Trustee for the Wei He Trust dated July 1, 2005; AHOMELAND, INC., a California Corporation; GOLDEN ARK, INC., a California Corporation; and DOES 1 - 10,<br><br>            Defendants. | Case No. 2:18-cv-00498 RGK-PLA<br><br>ASSIGNED FOR ALL PURPOSES TO Judge R. Gary Klausner<br><br>Date: June 18, 2018<br>Time: 9:00 a.m.<br>Dept: 850 - 8th Floor<br><br>**JOINT RULE 26(F) REPORT**<br><br>Trial Date: None Set |

Pursuant to Federal Rules of Civil Procedure 26, Local Rule 26 1, and this Court's Order Setting Rule 16(b)/26(f) Scheduling Conference issued March 14, 2018, Plaintiff Thomas A. Seaman ("Receiver"), the Court-appointed receiver for USFIA, Inc. ("USFIA"), Alliance Financial Group, Inc., Amauction, Inc., Aborell Mgmt I, LLC, Aborell Advisors I, LLC, Aborell REIT II, LLC, Ahome Real Estate, LLC, Alliance NGN, Inc., Apollo REIT I, Inc., Apollo REIT II, LLC, Amkey, Inc., US China Consultation Association, Quail Ranch Golf Course, LLC, and their subsidiaries and affiliates (collectively, "Receivership Entities"), and Defendants Wei He, Ahomeland, Inc., and Golden Ark, Inc. (collectively, "Defendants"), by and through counsel, hereby submit this Joint Rule 26(f) Report.  The Receiver and Defendants are together referred to herein as the "Reporting Parties."

## I. JOINT STATEMENT OF THE CASE

On or about September 28, 2015, the Securities and Exchange Commission ("Commission") filed a civil enforcement action styled as *Securities and Exchange Commission v. Steve Chen, USFIA, Inc., et al.*, in the United States District Court, Central District of California, Case No. 14-CV-07249-SJO (FFMx) ("SEC Action"), against various entities and individuals alleging violations of securities laws perpetrated through fraud.  In the SEC Action, the Receiver was first appointed as temporary receiver for the Receivership Entities on or about September 28, 2015, which appointment was later made permanent on or about October 6, 2015.  *See* SEC Action, Docket Nos. 8, 13-14.

The alleged fraudulent scheme operated by the defendants in the SEC Action is discussed in detail in the Commission's complaint and associated filings.  To very briefly summarize, the Commission alleged violations of various provisions of the Securities Act of 1933 and the Securities Exchange Act of 1934, in connection with the offer of investment opportunities through purchase of membership or product "packages" consisting of amber gemstones and jewelry-related products and reward points or units.  While the fraudulent enterprise, operated principally through

USFIA, was marketed as an investment program, the only source of USFIA's revenue was derived from its investors's investments in the company. The company thus operated an illegal and inherently fraudulent pyramid scheme and Ponzi scheme, where funds paid by investors for their packages were used to pay rewards to other investors and the vast majority of investors were destined to lose money.

This Court has similarly determined in its Order Re: Plaintiff's Motion for Summary Judgment as to Liability and Injunctive Relief, entered in the SEC Action on December 8, 2016, that "USFIA ran a pyramid scheme," that such scheme are "inherently fraudulent because they must eventually collapse," where "the most recent entrants [are destined] to lose their money," and that "USFIA's pyramid scheme is a scheme to defraud in violation of [securities laws]." *See* SEC Action, Docket No. 167. Steve Chen has consented to entry of judgment against him in the SEC Action, which judgment was entered on March 13, 2017 and, as part of that consent judgment, confirmed that he does not deny the Commissions' allegations. *See* SEC Action, Docket Nos. 209, 210.

### *The Receiver's Allegations:*

The Receiver's First Amended Complaint alleges that Defendants received title to various real properties and that the Receivership Entities made various payments to Defendants or to third parties on Defendants' behalf and for their benefit. Specifically, Defendants collectively received, or are presently holding title to, two residential real properties that were purchased with funds from the Receivership Entities in excess of $5.3 million. These include the property located at 5088 Scholarship, Irvine, CA (the "Scholarship Property") purchased with $910,000 in funds paid by the Receivership Entities; and the property located at 363 Monterey Pines Drive, Arcadia, CA (the "Monterey Pines Property") purchased with $4,425,000 in funds paid by the Receivership Entities. In addition to the real properties, in excess of $1 million was paid by the Receivership Entities either directly to Wei He and her companies, or to third parties on her behalf and for her

benefit. These payments were made over the course of years and reflect payments for Wei He's personal expenses and expenditures. On information and belief, the Receivership Entities received no value in exchange for these payments.

These transfers of funds paid to Defendants, including the purchase of real properties whose titles were placed in Defendants' names, were made by the Receivership Entities' former operators with the intent to hinder, delay, or defraud the Receivership Entities' creditors and other investors. Such payments were made from the proceeds of the pyramid scheme and Ponzi scheme, which were generated from investors in the scheme. The Receivership Entities received nothing of value in exchange for the transfers of funds and purchases of properties titled in Defendants' names. Accordingly, the transfers of funds paid to Defendants or to third parties on their behalf and for their benefit are subject to disgorgement and recovery by the Receiver under the California Uniform Voidable Transactions Act ("CUVTA"). *See* Cal. Civ. Code §§ 3439.04(a).

The Receiver seeks recovery of the funds paid by the Receivership Entities in connection with the purchases of the Scholarship Property and the Monterey Pines Property, and recovery of more than $1 million paid either directly to Wei He and her companies or to third parties on her behalf and for her benefit. Specifically with respect to the Scholarship Property and Monterey Pines Property, the Receiver alternatively seeks an order deeming title in these properties to be held by Defendants in constructive trust for the benefit of the Receivership Entities.

***Defendant's Contentions:***

Defendants Wei He, Ahomeland, Inc. and Golden Ark, Inc. content that there was no fraudulent conveyance for the transfer of the two real properties located at 363 Monterey Pines, and 5008 Scholarship and the $1 million as alleged in the First Amended Complaint. Wei He was Steve Chen ex-wife that they divorced since 2007. Defendants were not involved in any of Steve Chen's or the other defendants' illegal business and they were not listed as defendants in the SEC litigation.

Defendants are real estate developers whose business for the last ten plus years is to find and purchase fixer properties, and sell them for profits after they were remodeled. The business is independent and separated from the Receivership Entities. The 363 Monterey Pines Property is a project that Defendants found with the intent to flip for profit after fixing it up. Defendants admit that the property was purchased with borrowed funds from Steve Chen which is evidenced by a written interest bearing note. The note was turned over to the Receiver even before the action was filed. Defendants offered to repay the Receiver for the amount borrowed with interest. Defendants request that all costs of remodeling, upgrade, labor and maintenance be reimbursed.

As for the 5008 Scholarship Property, it was purchased with contributions from both Steve Chen and Defendants for their son's use during college. There was an express agreement that once their son ceased to use the property, it would be sold and each party would receive their own shares of interest after deduction of all costs and expenses. There was no expectation of any profit resulting from the sales of the property.

As for the one million dollars in payment alleged in the First Amended Complaint, Defendants contend that the payment was for fair value equivalent to the amount of work performed for Steve Chen and the Receiver's entities such as remodeling costs, labor, and goods as well as repayments of loan borrowed from Wei He.

## II. Subject Matter Jurisdiction

The Reporting Parties agree the Court has jurisdiction over this matter under 28 U.S.C. §§ 1345 and 1367(a), and the doctrines of ancillary and supplemental jurisdiction, in that this action is substantially related to the original claims in the SEC Action.

## III. Legal Issues

The Receiver's only alleged cause of action is for fraudulent transfer pursuant to the CUVTA. *See* Cal. Civ. Code §§ 3439.04(a). Under this Act, a transfer is subject to avoidance when made with (1) actual intent to defraud, or (2) constructive fraudulent intent based on the lack of reasonably equivalent value provided in exchange. *See* Cal. Civ. Code § 3439.04(a); *see also*, *Optional Capital, Inc. v. DAS Corp.*, 222 Cal. App. 4th 1388, 1401-1402 (2014); *Donell v. Kowell*, 533 F.3d 762, 770-771 (9th Cir. 2008); *In re Cohen*, 199 B.R. 709, 715-716 (9th Cir. 1996). When seeking recovery of funds fraudulently transferred under the CUVTA, "fraud, in the sense of morally culpable conduct, need not be present in either category of fraudulent transfer. [Rather,] [a]n actually fraudulent transfer could, in principle, occur without genuine fraud." *In re Cohen*, 199 B.R. at 716.

As for constructive fraud under the CUVTA, constructive fraud is found where the debtor made the transfer without receiving reasonably equivalent value in exchange and either:

"(A) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction. [Or,]

(B) Intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due." Cal. Civ. Code § 3439.04(a)(2).

Therefore, based on information presently known to the Reporting Parties, the Reporting Parties believe the key factual and legal issues in this action include the following:

- The facts of the specific transactions involving the purchase of the Scholarship Property and the Monterey Pines Property.
- The facts of the specific transactions involving the more than $1 million in payments made by the Receivership Entities to Defendants or to third parties on their behalf and for their benefit.

- The terms and conditions, if any, of any agreements Defendants may have had with the Receivership Entities relating to the purchase of the Scholarship Property and the Monterey Pines Property.
- The terms and conditions, if any, of any agreements Defendants may have had with the Receivership Entities relating to the more than $1 million in payments made by the Receivership Entities to Defendants or to third parties on their behalf and for their benefit.
- Whether Defendants paid reasonably equivalent value to the Receivership Entities in exchange for the money borrowed for the purchase of the Monterey Pines Property.
- Whether the purchase of the Scholarship Property was made with the actual or constructive fraudulent intent on the part of the Receivership Entities' former operator.
- Whether the payments made by the Receivership Entities to Defendants or to third parties on their behalf and for their benefit was made with the actual or constructive fraudulent intent on the part of the Receivership Entities' former operators.
- Whether Defendants were involved in the Ponzi scheme run by the Receivership Entities.
- Whether Defendants knowingly involved themselves in the Ponzi scheme operated by the Receivership Entities' that establishes actual fraudulent intent with respect to the transactions at issue.
- Whether the purchase of the Scholarship Property and the Monterey Pines Property, and the other payments made to Defendants by the Receivership Entities, are actual or constructively fraudulent transfers.
- What amounts, if any, are recoverable from Defendants in light of the fraudulent transfers.
- Whether the Scholarship Property and the Monterey Pines Property are to be deemed to be held by Defendants in constructive trust for the benefit of the Receivership Entities because of the above transactions between Defendants and the Receivership Entities.

### IV. PARTIES, AND NON-PARTY WITNESSES

Based on information presently known, the Reporting Parties identify the following party and non-party witnesses that will have information concerning the main issues in the action:

- Defendant Wei He
- Plaintiff Thomas A. Seaman

-7-
JOINT RULE 26(F) REPORT

- Third parties who may have information concerning the purchase of the Scholarship Property and Monterey Pines Property, and the various payments made to Wei He and to third parties on her behalf and for her benefit.

## V. DAMAGES

Based on information presently known, the Reporting Parties agree that the range of provable damages is roughly $6.3 million, comprised of the funds paid by the Receivership Entities for the purchase of the Scholarship Property and the Monterey Pines Property and the more than $1 million in funds paid to Wei He or to third parties on her behalf and for her benefit.

## VI. INSURANCE

Based on information presently known, the Reporting Parties are not aware of any applicable insurance coverable for the claims at issue.

## VII. COMPLEX LITIGATION

The Reporting Parties do not believe this is a complex case and do not believe that any of the procedures of the Manual for Complex Litigation should be utilized.

## VIII. MOTIONS

Defendants previously filed a motion to dismiss that was deemed moot based on the Receiver's filing of his First Amended Complaint.

Based on information presently known, the Reporting Parties are not aware of any other parties or claims that may be added by amendment and do not presently intend to seek further amendment of the First Amended Complaint or seek to transfer venue. The Reporting Parties intend to seek summary judgment following the conclusion of fact discovery, and believe they will file one or more motions for summary judgment.

The Receiver proposes Monday, December 17, 2018 as the cut-off date for hearing dispositive motions. Defendants propose the cut-off date for hearing dispositive motions to be sixty days after the close of discovery.

## IX. SETTLEMENT AND ALTERNATIVE DISPUTE RESOLUTION

The Reporting Parties have actively and diligently engaged in settlement discussions and have informally exchanged some documents in connection therewith. While settlement discussions remain ongoing, the Reporting Parties anticipate that they will be in a better position to discuss settlement, and the prospects for settlement will be maximized, once key discovery is completed.

The Reporting Parties request ADR Procedure No. 1 for a settlement conference before the Magistrate rather than private mediation.

The Receiver believes ADR Procedure No. 1 is appropriate due to the importance of minimizing administrative expenses of the receivership estate. The Receiver's goal is to maximize the funds available in the receivership estate to distribute to defrauded investors and creditors. Private mediation would impose significant costs on the receivership estate, reducing the net recovery for the receivership estate and therefore the investor victims of the pyramid scheme and Ponzi scheme. While the Receiver proposes ADR Procedure No. 1, he requests that the date to complete mediation be put out closer to the established trial date, so the Reporting Parties have an opportunity to fully explore settlement before proceeding to a settlement conference before the Magistrate. If informal settlement efforts between the Reporting Parties are unsuccessful, the Receiver will further evaluate the merits and likelihood of settlement, and may request an exemption from formal mediation if appropriate.

## X. TRIAL ESTIMATE

The Receiver does not anticipate that trial will require more than 1-3 days. Defendants, due to the need of an interpreter, believe that trial is likely to last 5-7 days. The Receiver requests a trial by Court, while Defendants request a trial by jury.

The Receiver proposes that trial be scheduled to begin on February 18, 2019. Defendants propose trial be scheduled for June 17, 2019 due to potential issues that may arise in discovery.

## XI. ADDITIONAL PARTIES

The Reporting Parties do not presently know of any additional parties that will be added to this action.

## XII. EXPERT WITNESSES AND DISCOVERY

Based on information presently known, the Reporting Parties anticipated that one to two expert witnesses will be needed to testify at trial. Out of an abundance of caution, and based on the proposed trial date of February 18, 2019, the Receiver proposes October 19, 2018 as the deadline for identification of expert witnesses, and December 14, 2018 as the cut-off date for any expert discovery.

Since the gist of this case is about tracing funds, Defendants' banking records are essential evidence with high probative value. Defendants anticipate that there will be delay in obtaining the records because the banking institutions that have Defendants' ancient records had either merged or bought out by other banks since 2008. Defendants, based on their proposed trial date of June 17, 2019, propose April 19, 2018 as the deadline for the identification of expert witnesses, and May 17, 2019 as the cut-off date for any expert discovery.

## XIII. DISCOVERY PLAN (Fed. R. Civ. P. 26(f)(3))

Based on information presently known, the Reporting Parties anticipate serving written discovery, including requests for admission, interrogatories, and requests for production of documents. Such discovery will focus on the key factual and legal issues relevant to the sole fraudulent transfer claim as specifically set forth herein. The Reporting Parties do not presently anticipate that any expert discovery will be necessary.

A. The Reporting Parties presently do not believe that any changes to disclosures under Rule 26(a) should be made, and do not believe discovery needs to be conducted in phases or limited in other manners.

B. The Reporting Parties believe that the subjects for discovery are as set forth in Section III above. The Receiver proposes November 16, 2018 as the cut-off date for fact discovery. Defendants propose May 17, 2019 as the cut-off date for fact discovery.

C. The Reporting Parties believe that banking records are essential evidence but may not be readily accessible. If they are found, they will be produced in hard copies or by PDF, and do not presently believe that there will be any issues concerning the preservation of electronically stored information.

D. The Reporting Parties are not presently aware of any issues concerning claims of privilege or similar protections for trial-preparation materials.

E. The Reporting Parties do not believe any changes should be made in the limitations on discovery imposed pursuant to Fed. R. Civ. P. 26(f) or local rules.

F. The Reporting Parties do not presently know of other issues that may affect the status or management of this case, and do not believe there is any need for severance, bifurcation or other ordering of proof.

**XIV. LEAD TRIAL COUNSEL**

The Receiver's lead trial counsel include: David R. Zaro and Ted G. Fates, who confirm they are registered as ECF Users. Mr. Zaro's email address is dzaro@allenamatkins.com and Mr. Fates' email address is tfates@allenmatkins.com. Mr. Zaro and Mr. Fates will be supported by Tim C. Hsu, who also confirms he is registered as an ECF user, and whose email address is thsu@allenmatkin.com.

Defendant's lead trial counsel is Mary Sun, who confirms she is registered as an ECF User. Ms. Sun's email address is mary@sunlegalgroup.com.

## XV. INDEPENDENT EXPERT OR MASTER

The Reporting Parties agree this is not a case in which the Court should consider appointing a Master or an independent scientific expert.

## XVI. MAGISTRATE JUDGE

The Reporting Parties do not consent to have a Magistrate Judge preside over the entirety of this action.

Dated: June 8, 2018

ALLEN MATKINS LECK GAMBLE
MALLORY & NATSIS LLP
DAVID R. ZARO
EDWARD G. FATES
TIM C. HSU

By: */s/ Tim C. Hsu*
TIM C. HSU
Attorneys for Receiver
THOMAS SEAMAN

Dated: June 8, 2018

LAW OFFICE OF MARY SUN

By: */s/ Mary Sun*
MARY SUN
Attorneys for Defendants
Wei He, Ahomeland, Inc., and
Golden Ark, Inc.

Pursuant to Local Rule 5-4.3.4(a)(2)(i), the filer hereby attests that all other signatories listed concur in this filing's content and have authorized this filing.